UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONALD E.,

                        Plaintiff,

          v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

                        Defendant.

_____

DECISION AND ORDER

20-CV-1869L

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner").[1] This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On May 22, 2018, plaintiff, then fifty-three years old, filed applications for a period of disability insurance benefits, and for supplemental security income benefits, alleging disability beginning August 5, 2015. (Administrative Transcript, Dkt. #8 at 12).

       Plaintiff's applications were initially denied. He requested a hearing, which was held via videoconference on January 6, 2020 before Administrative Law Judge ("ALJ") Janice E. Barnes-Williams. The ALJ issued an unfavorable decision on February 4, 2020. (Dkt. #8 at 12-24). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 19, 2020. (Dkt. #8 at 1-3). Plaintiff now appeals.

---

[1] On or about July 9, 2021, Kilolo Kijakazi became the acting Commissioner of the Social Security Administration and is substituted for Andrew Saul as defendant in this action. *See* Fed. R. Civ. Proc. 25(d)(1).

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #14), and the Commissioner has cross moved (Dkt. #20) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, which reflect treatment for major depressive disorder, generalized anxiety disorder, schizophreniform disorder, bipolar II disorder, schizophrenia, obsessive-compulsive disorder, and psychosis. The ALJ determined that these conditions together constituted a severe impairment not equaling a listed impairment. (Dkt. #8 at 15). The ALJ also noted that plaintiff had the non-severe impairments of complex regional pain syndrome of the right pinky finger, degenerative disc disease, obesity, and hypertension, the effects of which the ALJ indicated that she had considered in determining plaintiff's limitations. (Dkt. #8 at 15-16).

Applying the special technique for mental impairments, the ALJ found that plaintiff has no more than moderate limitations in each of the four relevant functional areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentration, persistence and pace; and (4) adapting and managing himself. (Dkt. #8 at 16).

2

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: ability to concentrate, persist, and remain on task and pace, and to adapt to simple, routine, and repetitive tasks, which may require detailed instructions, but not the performance of complex tasks. His workplace must be free of fast-paced production requirements and can involve only simple, work-related decisions with few, if any, workplace changes. Plaintiff can never interact with the public, but can work around coworkers, with no more than occasional interaction with coworkers or supervisors. (Dkt. #8 at 17).

When presented with this RFC as a hypothetical at the hearing, vocational expert Denise Waddell testified that such an individual could not perform plaintiff's past relevant work as a stock clerk, sales clerk, tool rental clerk, or lubrication technician. (Dkt. #8 at 22). However, such a person could perform the representative unskilled, medium exertion positions of laundry worker, tumbler operator, and binder. (Dkt. #8 at 23). The ALJ accordingly found plaintiff "not disabled."

## I.    Plaintiff's Non-Severe Exertional Impairments

Initially, plaintiff argues that the ALJ, despite claiming to have accounted for all of plaintiff's non-severe impairments in her RFC determination, implicitly failed to properly account for plaintiff's reflex sympathetic dystrophy, complex regional pain syndrome of the right pinky, and degenerative disc disease, because the RFC finding included only nonexertional limitations.

The Court disagrees. As the ALJ noted, imaging studies of plaintiff's right hand and spine showed normal or "benign" findings, and plaintiff's range of motion, strength, posture, gait, stance, and handling and fingering have consistently been found to be normal or full. (Dkt. #8 at 15). Moreover, the ALJ's implicit finding that no exertional, postural or manipulative limitations were merited by plaintiff's non-severe physical impairments was well-supported by the medical

opinions of record. Consulting internist Dr. Nikita Dave (Dkt. #8 at 341-44) and reviewing state agency physician Dr. J. Lawrence (Dkt. #8 at 67-68), the only physicians who rendered physical RFC opinions, found no abnormalities or deficiencies, and identified no work-related physical limitations.

Because the record did not establish that any of plaintiff's physical impairments "contributed to any functional limitations," the ALJ did not err in declining to include exertional limitations in her RFC finding. *Andino v. Saul*, 2019 U.S. Dist. LEXIS 163400 at *6 (W.D.N.Y. 2019).

## II.     Treating and Examining Source Opinions

Plaintiff also contends that the ALJ erred in her assessment of the medical opinions of treating psychiatrist Dr. Richard Bennett, and examining psychologist Dr. Janine Ippolito, with respect to plaintiff's mental RFC. Here, the Court agrees.

Dr. Bennett rendered an opinion on December 19, 2019, based on a seventeen-year treatment history. (Dkt. #8 at 248, 335, 413-15). Dr. Bennett indicated that due to "unchanged" mobility problems (identified elsewhere as psychomotor retardation – slowed thinking and body movements), no more than "fair" eye contact and concentration, isolative issues, disordered sleep, worry, paranoia, and an inability to sustain a normal work day routine, plaintiff had no more than "fair" abilities in nearly every aspect of work-related mental functioning. Dr. Bennett opined that plaintiff had no useful ability to function with respect to maintaining attendance and routine, working in coordination with or proximity to others without being unduly distracted by them, completing a workday without undue interruption from psychological symptoms, getting along with coworkers or peers without exhibiting behavioral extremes, and responding appropriately to changes in a routine work setting. *Id*.

4

Dr. Ippolito examined plaintiff on July 24, 2018. (Dkt. #8 at 335-39). She noted plaintiff's psychiatric history, which included a three-week hospitalization for a suicide attempt in 2000, after which plaintiff commenced psychiatric medication management, which he believed had been helpful in managing his symptoms. (Dkt. #8 at 335). Plaintiff reported sleep disturbances, depressive symptoms, anxiety that sometimes prevented him from leaving his house, panic attacks, auditory hallucinations including knocking noises and voices, and difficulty concentrating. (Dkt. #8 at 336). Plaintiff indicated that he kept in touch with his mother, brother, and one of his three grown children. He socializes with no one. His daily activities included cooking, cleaning, laundry, grocery shopping, personal care, watching TV, and engaging in hobbies such as maintaining Bonsai trees. Dr. Ippolito noted that plaintiff was "extremely tense and rocked slightly back and forth throughout today's evaluation," and displayed only fleeting eye contact. (Dkt. #8 at 336-37). Attention and concentration, and recent and remote memory skills, were impaired due to emotional distress. Insight and judgment were "fair." *Id*.

Dr. Ippolito opined that due to his mental health symptoms, plaintiff had moderate limitations in sustaining attendance and maintaining a routine, moderate-to-marked limitations in interacting adequately with others, and marked limitations in regulating emotions, controlling behavior, and maintaining well-being. (Dkt. #8 at 338).

The ALJ found both of Dr. Bennett's and Dr. Ippolito's opinions "unpersuasive," characterizing them as being "in stark contrast to the relatively normal mental status findings noted throughout Dr. Bennett's records," as well as with plaintiff's "generally normal activities of daily living," and criticizing the non-elaborative nature of Dr. Bennett's opinion, which was written on a check-box form. (Dkt. #8 at 21). Instead, the ALJ deferred to the medical opinions of state agency psychologist Dr. K. Lieber-Diaz, who had reviewed plaintiff's medical records and concluded that

5

his mental health limitations ranged from mild to moderate, such that "[plaintiff] would be capable of simple work in a setting that has limited contact with others," variously described as the ability to "perform work with limited and superficial contact with the public and other workers . . . due to anxiety in social situations." (Dkt. #8 at 20, 69-70, 348-50).[2]

In assessing medical opinion evidence, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider *all* medical opinions in light of five factors: (1) supportability; (2) consistency with other evidence of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§404.1520c(c), 416.920c(c)(emphasis added). The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions of record, and must specifically explain how the supportability and consistency factors were weighed. *See Salleh D. v. Commissioner*, 2022 U.S. Dist. LEXIS 427 at *9-*11 (W.D.N.Y. 2022).

Here, the ALJ's finding that Dr. Bennett's and Dr. Ippolito's opinions were "unpersuasive" was not sufficiently supported or explained.

Initially, while the ALJ was correct that some of Dr. Bennett's examination findings were "relatively normal," the ALJ failed to acknowledge or reconcile those portions of plaintiff's

---

[2] Arguably, the ALJ's RFC finding that plaintiff can have "occasional" contact with coworkers is inconsistent with a limitation to only "superficial" contact with them – a discrepancy which the ALJ does not identify or explain, despite finding the reviewer's opinion "persuasive." (Dkt. #8 at 20). This, too, constitutes reversible error.

treatment records which reflected abnormal findings, specifically in the areas of functioning where

Dr. Bennett and Dr. Ippolito identified moderate-to-marked, or marked, impairments. For example,

although Dr. Bennett often assessed plaintiff's mood, eye contact, memory, attention, judgment,

and insight as "fair" or better, he also noted that plaintiff frequently missed appointments, and

consistently experienced annoying or threatening auditory hallucinations which made plaintiff

afraid, and interfered with his sleep. Dr. Bennett also regularly noted decreased motivation,

psychomotor retardation, anxiety, engagement in self-isolation behaviors, stress associated with

plaintiff's periodic engagement in part-time work, and paranoia. (Dkt. #8 at 249-300, 380-401).

Plaintiff indicated to Dr. Bennett that his anxiety sometimes made it overwhelming for him to

leave the house (Dkt. #8 at 279), and that while he was at one point working a job of "4-8 h[ou]rs"

stocking shelves, he found he was unable to do "any more" than that because he "g[ot] too

anxious." (Dkt. #8 at 285, 287, 289, 292).

Given that plaintiff's impaired mobility, social isolation, anxiety, disordered sleep, and

paranoia were the stated basis for Dr. Bennett's opinion concerning plaintiff's mental RFC, and

were well-documented in the treatment notes that the ALJ found "inconsistent" with that opinion,

the ALJ's "failure to acknowledge [this] relevant evidence or to explain its implicit rejection is

plain error." *Ceballos v. Bowen,* 649 F. Supp. 693, 702 (S.D.N.Y. 1986).

Furthermore, the ALJ's characterization of plaintiff's activities of daily living as "generally

normal" did not take account of plaintiff's particular mode of living, and did not constitute a

sufficient reason to reject Dr. Bennett's and Dr. Ippolito's opinions. Indeed, nothing about

plaintiff's daily activities, comprised of routine household maintenance, personal care, and

self-directed activities in a supportive and socially isolated setting, with his elderly mother (who

lives on the opposite side of the duplex in which plaintiff resides) handling his household finances,

completing paperwork for him, and driving him to appointments, suggested a "normal" level of mental functioning, or otherwise conflicted with Dr. Bennett's and Dr. Ippolito's shared opinions that plaintiff had marked difficulties with respect to, e.g., maintaining attendance, adhering to a routine, interacting with others, or responding appropriately to changes. *See Scott v. Berryhill*, 2018 U.S. Dist. LEXIS 211256 at *17 (W.D.N.Y. 2018)(citing *Dailey v. Colvin*, 2017 U.S. Dist. LEXIS 91579 at *13 (W.D.N.Y. 2017)("[c]ourts have consistently noted that [i]t is legal error to give excessive weight to a claimant's ability to perform basic daily activities when assessing his or her ability to engage in substantial gainful activity")(internal quotation marks and citation omitted). *See also Moss v. Colvin*, 2014 U.S. Dist. LEXIS 121472 at *85 (S.D.N.Y. 2014)("[t]here are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job"); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 519 (S.D.N.Y. 2000)(it is well-settled law in the Second Circuit that the ability to perform basic daily activities does not, in itself, contradict a claim of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves").

In sum, the ALJ rejected significant limitations that were unanimously opined by the only two treating or examining physicians of record with respect to plaintiff's mental RFC, without a well-supported explanation. "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [the ALJ] cannot simply selectively choose evidence in the record that supports his [or her] conclusions." *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995)(*quoting Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).

By rejecting the opinions of the only two treating and examining mental health sources on the basis of their alleged inconsistency with selected psychiatric treatment records, without

acknowledging the contradictory evidence in those treatment records which supported those opinions, or contacting either of those sources for clarification, I find that the ALJ improperly substituted her "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Because the ALJ failed to apply the requisite standards in considering the medical opinions of record concerning plaintiff's mental RFC, and because the record does not necessarily provide "persuasive proof of disability," remand for further proceedings – and not for the calculation and payment of benefits – is the appropriate remedy. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

Having determined that remand for the purpose of reweighing the medical opinion evidence and producing an entirely new decision is necessary and appropriate, the Court declines to reach plaintiff's other arguments.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #14) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #20) is denied, and this matter is remanded for further proceedings.

On remand, the ALJ should reassess the evidence of record with respect to plaintiff's mental RFC, contacting treating and examining medical sources for clarification or soliciting additional consulting opinions where appropriate, and should render a new decision which reassesses plaintiff's severe mental impairments and the limitations posed thereby, including but

not limited to whether plaintiff's mental health symptoms satisfy the requirements of a listed

impairment.

        IT IS SO ORDERED.


                                    _____
                                          DAVID G. LARIMER
                                       United States District Judge

Dated:  Rochester, New York
        October 7, 2022.